**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WINDMAR PV ENERGY, INC.<br><br>      **Plaintiff,**<br><br>        v.<br><br>SOLAR NOW PUERTO RICO, LLC et al.<br><br><br>      **Defendants.** | **CIVIL NO. 24-1570 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Solar Now Puerto Rico, LLC's ("Defendant" or "Solar Now") *Motion to Dismiss Complaint Pursuant to Rule 12(b)(6)* ("*Motion to Dismiss*"). (Docket No. 11). For the reasons outlined below, the Court hereby **GRANTS** Defendant Solar Now's *Motion to Dismiss*.

## I.   BACKGROUND

Plaintiff Windmar PV, Energy, Inc. ("Plaintiff" or "Windmar") and Defendant Solar Now are both Puerto Rico-based companies dedicated to the sale and installation of solar energy equipment. (Docket No. 1 ¶¶ 4-5). Plaintiff owns "the exclusive rights to all WINDMAR and WINDMAR HOME commercial marks, service marks and commercial images, name designs, branding, and products" and has filed trademark registrations for these marks with the United States Patent and Trademark Office ("USPTO"). Id. ¶ 13. As shown

in the *Complaint* and its attached exhibits, the registered marks consist of various elements including: the silhouette of the sun's corona; the words "WINDMAR" or "WINDMAR HOME"; a combination of the colors orange, blue, black, and grey; and a stylized image of a windmill replacing the "I" in "WINDMAR." (Docket Nos. 1 ¶ 16; 1-6; 1-7 and 1-8). The typical logo shows the words "WINDMAR HOME" written in blue and grey, with the "I" replaced by a blue windmill logo; the words are placed under and within an orange outline of a sunburst or corona. (Docket No. 1-12 at 2).

Windmar's registered marks have been in effect since, "at the very least," January 1, 2015. (Docket No. 1 ¶ 15). During this period, Plaintiff has actively promoted its business by using the registered marks in "newspapers, magazines, social media, radio, billboards, television shows...both nationally and internationally." Id. ¶ 18. Plaintiff asserts that it is the "number one" company in the "solar energy industry in Puerto Rico," and has been "internationally recognized" outside of Puerto Rico. Id. ¶ 19. Furthermore, Windmar asserts that its registered marks have "come to signify the high quality of [its] goods and services," and hold "incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff." Id. ¶ 23.

Windmar claims trouble arose on or around August 28, 2024, when Defendant began a marketing campaign that allegedly utilized Plaintiff's registered marks. Id. ¶ 26. Plaintiff points to

billboards and a social media post made by Defendant Solar Now,
elements of which allude to Windmar's registered marks. Id. ¶ 27.
Multiple billboards show a salesman pointing to a form listing
three different options for solar companies: a colored logo of
Defendant Solar Now and two greyscale logos that feature the
profile of a sun and its corona. (Docket No. 1-11). One greyscale
logo is titled "PAQUITO SOLAR" and the other "MOLINITO." Id.
Plaintiff claims that the word "MOLINITO" (which translates to
"little windmill"), when used in conjunction with the sun-related
imagery, alludes to Windmar's logo. (Docket Nos. 1 ¶ 28 and 1-11).
On the billboards, Defendant's logo is next to a "X" mark of
approval while the two greyscale logos are placed further down the
form with the implication that they are inferior options to Solar
Now. (Docket No. 1-11 at 2-11).

    Plaintiff also objects to a social media post made by Solar
Now that shows an indecisive man debating which solar energy
company to choose as the aforementioned "PAQUITO SOLAR" and
"MOLINITO" logos stand behind him. Id. at 1. The "MOLINITO" logo
is surrounded by a yellow sun and corona. Id. With his hand over
his head, the man looks up at the "Paquito Solar" logo with his
back to the "MOLINITO" logo. Id. In Spanish, the post's caption
advises prospective customers that with many options on the market,
Solar Now is here to help customers make easy decisions about their
solar power needs. Id.

To assist the reader, the Court provides the following two examples of Windmar's registered mark (to the left) and Solar Now's "MOLINITO" mark used in its advertisements (to the right). Additional variations of these marks are used by both parties, but these two designs are used most often.




*Figure 1*



*Figure 2*

(Docket Nos. 1; 1-11 and 1-12).

On September 3, 2024, Plaintiff's counsel sent Defendant a letter stating that Solar Now's advertisements infringe on Plaintiff's registered marks, primarily its main logo. (Docket No. 1-12). Windmar requested that Defendant stop using the allegedly infringing advertisements and remove all copies of the materials that include the problematic symbols. Id. at 3-4. On September 12, 2024, Solar Now's counsel responded, denying Plaintiff's accusations but agreeing to remove the allegedly infringing material "to avoid controversies, inconveniences, and unnecessary expenses." (Docket No. 1-13). Defendant argued that its activities did not infringe on Windmar's trademarks but, at most, served to "distinguish Solar Now's Products and services" from those provided by Windmar and did not violate federal or Puerto Rico law. Id. at 1.

On December 10, 2024, Plaintiff filed its *Complaint* against Solar Now, ABC Entities, John Doe, and XYZ Insurance Companies, asserting that Defendant's advertisements violated several provisions of the federal Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Puerto Rico Trademarks Act, P.R. Laws Ann. tit. 10, § 223a *et seq.* (Docket No. 1). Plaintiff also alleges that Defendant refused to remove the offending advertisements and did so only when the advertising contract expired. (Docket No. 13 at 16). Plaintiff seeks statutory damages under Puerto Rico law, attorneys' fees and costs, pre- and post-judgment interest, and injunctive relief. Id. ¶¶ 94-97.

Defendant filed the *Motion to Dismiss* on January 24, 2025, arguing that dismissal under Rule 12(b)(6) is appropriate because the case is moot and, regardless of mootness, Plaintiff has failed to allege facts showing that trademark infringement occurred. (Docket No. 11). Plaintiff filed a *Response* on February 10, 2025, rebutting Defendant's arguments. (Docket No. 13). On February 26, 2025, Defendant filed its *Reply* to the *Response*. (Docket No. 18).

## II.  LEGAL STANDARD

To determine if a complaint has stated a plausible, non-speculative claim for relief, a court must determine whether "*all* the facts alleged [in the complaint], when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible." Ocasio-Hernandez v. Fortuno-

Burset, 640 F.3d 1, 14 (1st Cir. 2011) (emphasis in original).
This requires treating "any non-conclusory factual allegations in
the complaint as true." Nieto-Vicenty v. Valledor, 984 F.Supp. 2d
17, 20 (D.P.R. 2013); Schatz v. Republican State Leadership Comm.,
669 F.3d 50, 55 (1st Cir. 2012) (courts should take "the
complaint's well-pled (*i.e.*, non-conclusory, non-speculative)
facts as true, drawing all reasonable inferences in the pleader's
favor"). A claim holds the facial plausibility necessary to evade
dismissal at the Rule 12(b)(6) stage when "the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted)
(while "plausibility" is not the same as "probability," it requires
more than a "sheer possibility that a defendant has acted
unlawfully.").

    "[A] plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do." Bell Atl. Corp. et al. v. Twombly et al.,
550 U.S. 544, 555 (2007) (citation omitted). Further, a complaint
will not stand if it offers only "naked assertion[s] devoid of
further factual enhancements." Ashcroft, 556 U.S. at 678 (internal
quotation marks and citation omitted). Courts may also consider:
"(a) 'implications from documents' attached to or fairly

'incorporated into the complaint,'(b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" <u>Schatz</u>, 669 F.3d at 55–56 (quoting <u>Arturet–Vélez v. R.J. Reynolds Tobacco Co.</u>*,* 429 F.3d 10, 13 n.2 (1st Cir. 2005)). A defendant may raise affirmative defenses on a motion to dismiss under Rule 12(b)(6) if the underlying facts of the defense "are clear from the face of the complaint as supplemented by 'matters fairly incorporated within it and matters susceptible to judicial notice.'" <u>Monsarrat v. Newman</u>, 28 F.4th 314, 318 (1st Cir. 2022) (citations omitted).

### III. APPLICABLE LAW

#### A. The Lanham Act

The Lanham Act is the "core federal trademark statute" and defines a trademark as "'any word, name, symbol, or device, or any combination thereof' that a person uses 'to identify and distinguish his or her goods...from those manufactured or sold by others and to indicate the source of the goods.'" <u>Jack Daniel's Props., Inc. v. VIP Prods. LLC</u>, 599 U.S. 140, 145 (2023) (citing 15 U.S.C. § 1127). A trademark "tells the public who is responsible for a product" and "enables customers to select 'the goods and services that they wish to purchase, as well as those they want to avoid.'" <u>Id.</u> (citing <u>Matal v. Tam</u>, 582 U.S. 218, 224 (2017)). A mark must be distinctive to qualify for trademark protection. *See*

Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116
(1st Cir. 2006) (holding "generic marks" cannot be distinctive).

     The Lanham Act helps assure the holder of a mark that "it
(and not an imitating competitor) will reap the financial,
reputation-related rewards associated with a desirable product,"
incentivizing    the    "production    of    quality    goods"    and
"discourag[ing] those who hope to sell inferior products by
capitalizing on a consumer's inability quickly to evaluate the
quality of an item offered for sale." Qualitex Co. v. Jacobson
Prods. Co., Inc., 514 U.S. 159, 164 (1995) (citations omitted). To
obtain certain benefits under the Lanham Act, an owner of a mark
should apply to the USPTO to have the mark placed on a federal
register. See Jack Daniel's Props., Inc., 599 U.S. at 146.

     *i. Trademark infringement*

     Section 32(1) of the Lanham Act creates a cause of action
against any person who, without the consent of the trademark
holder, "use[s] in commerce any reproduction, counterfeit, copy,
or colorable imitation of a registered mark" to advertise "any
goods or services on or in connection with which such use is likely
to cause confusion, or to cause mistake, or to deceive." 15 U.S.C.
§ 1114(1)(a). Section 32(1) also prohibits the use of
reproductions, counterfeits, copies, or imitations of a registered
mark in the "advertising of goods or services...in connection with
which such use is likely to cause confusion, or to cause mistake,

or to deceive." 15 U.S.C. § 1114(1)(b). Offenders can be liable in civil actions, although under § 1114(1)(b), the registered holder cannot recover profits or damages unless the offense was committed with the knowledge that "such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive." Id.

A trademark infringement suit typically arises when "the owner of a mark sues someone using a mark that closely resembles its own," requiring the court to decide if the defendant's use is likely to result in confusion, mistake, or deception. Jack Daniel's Props., Inc., 599 U.S. at 147 (citing 15 U.S.C. §§ 1114(1)(A), 1125(a)(1)(A)). Confusion most often stems from "the source of a product or service." Moseley v. V Secret Catalog, Inc., 537 U.S. 418, 428 (2003); see also Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 49 (1st Cir. 2013).

The First Circuit has held that to prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must show: (i) it owns the relevant trademark, (ii) the offending party used the trademark or a similar mark, and (iii) the offending party's use of the marks likely confused consumers, causing the harm to the holder. See Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008) (citations omitted); see also Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 9 (1st Cir. 1996); 15 U.S.C. § 1114(1).

When a trademark infringement claim is brought over alleged confusion about the *source* of a good or service, a court looks at the possibility and extent of consumer confusion. *See* <u>Swarovski Aktiengesellschaft</u>, 704 F.3d at 49. There must be a likelihood of confusion, as shown through the eight-factor test articulated in <u>Pignons S.A. de Mecanique de Precision v. Polaroid Corp.</u>:

> (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

657 F.2d 482, 487-91 (1st Cir. 1981); <u>Borinquen Biscuit Corp.</u>, 443 F.3d at 120 (citing <u>Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.</u>, 718 F.2d 1201, 1205 (1st Cir. 1983)). Although all eight factors should be considered, no single factor carries "dispositive weight," and a party does not automatically prevail because the majority of *Pignons* factors weigh in its favor. <u>Borinquen Biscuit Corp.</u>, 443 F.3d at 120 (citations omitted); <u>Oriental Fin. Group, Inc. v. Cooperativa de Ahorro y Crédito Oriental</u>, 852 F.3d 15, 32 (1st Cir. 2016). **Without a showing of a likelihood of confusion, mistake, or deception, a plaintiff cannot demonstrate trademark infringement occurred and has no cause of action.** *See* <u>Swarovski Aktiengesellschaft</u>, 704 F.3d at 50.

Less common "nominative use" cases involve confusion over the *affiliation or endorsement* of a good or service. Id. at 49. The concern is that a consumer will be confused about a party's potential connection to the good or service, even if there is no question as to its source. For example, in Swarovski Aktiengesellschaft, the defendant Building No. 19, Inc., a discount retail store, purchased Swarovski crystal figurines from a third party and placed a newspaper advertisement for the figurines that included the word "Swarovski." 704 F.3d at 46-47. The plaintiff, Swarovski Aktiengesellschaft ("Swarovski") argued the defendant's advertisements constituted trademark infringement, in part because a consumer might be confused by the advertisement and think that Swarovski was affiliated with or endorsed a discount shop "in a way that might detract from its luxury status." Id. at 49-50. There were no allegations of confusion over the source of the goods advertised, but the First Circuit remanded the case because the district court did not make a sufficient finding of the likelihood of consumer confusion as to the plaintiff's possible affiliation or endorsement of the defendant's business. Id. at 49.

Although it has not endorsed "any particular approach to the nominative fair use doctrine," the First Circuit considered the use of the following three-factor test to evaluate "the lawfulness of a defendant's nominative use of a mark" in Swarovski Aktiengesellschaft: (i) "whether the plaintiff's product was

identifiable without use of the mark"; (ii) "whether the defendant used more of the mark than necessary"; and (iii) "whether the defendant accurately portrayed the relationship between itself and the plaintiff." Id. at 50-51, 53 (citations omitted). The Third and Ninth Circuits have adopted this test, although they differ on whether it is an affirmative defense or replaces the standard eight-factor test for confusion. See Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 222 (3d Cir. 2005) (adopting a "two-step approach in nominative use cases" where a plaintiff first proves a likelihood of confusion and a defendant then shows the three-factor test above demonstrates fairness); Toyota Motor Sales, U.S.A., Inc. v. Tabari, 610 F.3d 1171, 1175-76 (9th Cir. 2010) (adopting this three-factor test to evaluate "likelihood of confusion in nominative use cases.").

*ii. Unfair competition*

Section 43(a) of the Lanham Act provides a broader cause of action for unfair competition, including the false representations of origin or affiliation of goods, services, or commercial activities that could mislead consumers. 15 U.S.C. § 1125(a). This section allows claims for false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B). Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 122 (2014).

Defendants can be civilly liable for false association if they, "in connection with any goods or services," use in commerce

"any word, term, name, symbol, or device" that is "likely to cause confusion" "as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" and the plaintiff believes that they are or are likely to be damaged by such an act. 15 U.S.C. § 1125(a)(1)(A). These types of claims "typically involve 'attempts to appropriate the goodwill associated with a competitor[,]' for example, by misappropriating a trademark or falsely implying an endorsement." Am. Bd. of Internal Med. v. Salas Rushford, 114 F.4th 42, 64 (1st Cir. 2024) (citations omitted). The First Circuit "usually consider[s]" the Pignons factors "to gauge the likelihood of consumer confusion" under § 1125(a)(1)(A), which "mostly relate to the possibility of consumers mistaking one party's good, service, or trademark with that of another." Id. at 64, 64 n.25 (citing I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 43 (1st Cir. 1998)).

Defendants may be liable for false advertising if they misrepresent "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). A successful claim for false advertising must show: (i) the defendant "made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product"; (ii) the misrepresentation is material such that it is "likely to

influence" a consumer's purchasing decision; (iii) the
misrepresentation "actually deceives or has the tendency to
deceive a substantial segment of its audience"; (iv) "the defendant
placed the false or misleading statement in interstate commerce";
and (v) "the plaintiff has been or is likely to be injured as a
result of the misrepresentation, either by direct diversion of
sales or by a lessening of goodwill associated with its products."
Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d
302, 310-11 (1st Cir. 2002); *see also* Pegasystems, Inc. v. Appian
Corp., 424 F.Supp. 3d 214, 221-22 (D.Mass. 2019).

The "false" statement may be literally or implicitly false;
if literally false, the plaintiff does not need to establish
evidence of consumer deception. *See* Cashmere & Camel Hair Mfrs.
Inst., 284 F.3d at 311.S False advertising does not encompass
"exaggerated advertising, blustering and boasting upon which no
reasonable buyer would rely," but may include "specific and
measurable claims of product superiority" that "may be literally
false under the Lanham Act." Ferring Pharm. Inc. v. Braintree
Lab'ys., Inc., 38 F.Supp. 3d 169, 177 (D.Mass. 2014) (quoting
Clorox Co. P.R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 38-39
(1st Cir. 2000)).

*iii. Trademark dilution*

Section 43(a) establishes a cause of action for the dilution
of trademarks that are considered "famous" under the Lanham Act,

regardless of whether the marks have been registered. 15 U.S.C. § 1125(c); *see* <u>Matal</u>, 582 U.S. at 225. A mark is famous if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Courts may consider "all relevant factors" to determine if a mark should be designated as famous, including: (i) the "duration, extent, and geographic reach of advertising and publicity of the mark"; (ii) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (iii) "[t]he extent of actual recognition of the mark"; and (iv) whether the mark has been registered. 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

The holder of the famous registered mark can seek injunctive relief if, after the mark is famous, another person starts using the mark or trade name "in commerce" in a manner "that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." 15 U.S.C. § 1125(c)(1). Proof of the "likelihood of confusion" is not required. *See* <u>Lyons v. Gillette</u>, 882 F.Supp. 2d 217, 228 (D.Mass. 2012). "Dilution by blurring" involves the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). To determine if "dilution by blurring" has occurred, courts may consider "all relevant factors," including:

> (i) The degree of similarity between the mark
> or trade name and the famous mark; (ii) the
> degree of inherent or acquired distinctiveness
> of the famous mark; (iii) the extent to which
> the owner of the famous mark is engaging in
> substantially exclusive use of the mark; (iv)
> the degree of recognition of the famous mark;
> (v) whether the user of the mark or trade name
> intended to create an association with the
> famous mark; (vi) any actual association
> between the mark or trade name and the famous
> mark.

15 U.S.C. § 1125(c)(2)(B)(i)-(vi). "Dilution by tarnishment" is
the association between a famous mark and another mark or trade
name "that harms the reputation of the famous mark." 15 U.S.C. §
1125(c)(2)(C).

Section 43(a) includes various exclusions for fair use. "Any
fair use of a famous mark by another person other than as a
designation of source for the person's own goods or services" is
excluded, such as: (i) comparative advertising or promotions that
let "customers compare goods or services," and (ii) "identifying
and parodying, criticizing, or commenting upon the famous mark
owner or the goods or services of the famous mark owner." 15 U.S.C.
§ 1125(c)(3)(A)(i)-(ii); Jack Daniel's Props., Inc., 599 U.S. at
148 (noting that the exclusion does not apply "if the defendant
uses the similar mark" to designate the source of his own goods).
Comparative advertising that allows consumers to compare
"potentially competitive" services between parties is permissible
under § 1125(c)(3)(A)(i). Allied Interstate LLC v. Kimmel &

Silverman P.C., 2013 WL 4245987, at *4 (S.D.N.Y. 2013). An excludable parody must "conjure up" enough of the underlying object or concept as to make it recognizable, as well as enough of a contrast "so that [the parody's] message of ridicule or pointed humor becomes clear." Jack Daniel's Props., Inc., 599 U.S. 161. A successful parody can be considered when "assessing the likelihood of confusion" and "is not often likely to create confusion". Id.

**B. The Puerto Rico Trademarks Act**

The Puerto Rico Trademarks Act, codified at P.R. Laws Ann. tit. 10, § 223a *et seq.*, mirrors the Lanham Act in scope and content. Section 223w creates a cause of action for trademark infringement involving the reproduction, forgery, copying, imitation, use, or attempted use of any mark if such activity "is likely to cause confusion or deceive as to the origin of the goods or services or as to sponsorship or association." P.R. Laws Ann. tit. 10, § 223w. The Act also creates a cause of action against a person who, "as to goods or services, uses in commerce any word, term, name, symbol, slogan, trade dress, medium, logo, design, color, sound, scent, shape, object or a combination thereof; or any false origin designation; or any false or misleading" description or representation of a fact that:

> (1) Is likely to cause confusion or mislead or
> deceive as to the affiliation, connection, or
> association of such person with another person, or
> as to the origin, source, sponsorship, or approval

of his/her goods, services, or commercial
activities by another person, or

(2) in commercial advertising or in promotion,
misrepresents the nature, characteristics,
qualities, or geographic origin of his/her or
another person's goods, services, or commercial
activities, shall be held liable in civil action
by any person who was injured as a consequence of
such acts.

P.R. Laws Ann. tit. 10, § 223x. Finally, § 223y guards against the
dilution of famous marks, defined as those that are "widely
recognized by the general consumer in Puerto Rico, or in a
geographic area of Puerto Rico," as a source of goods or services
of the mark's holder. P.R. Laws Ann. tit. 10, § 223y(b). As with
the Lanham Act, the Puerto Rico Trademarks Act contains various
exclusions for the use of a famous mark without the owner's
consent, including comparative advertising and parody. P.R. Laws
Ann. tit. 10, § 223y(c).

## IV. DISCUSSION

Windmar's claims revolve around the alleged use of its
trademarks in Solar Now's advertisements. (Docket No. 1). The
*Complaint* alleges the advertisements are likely to result in
consumer confusion by creating the impression that Defendant's
goods and services "originate from, are associated or affiliated
with, or otherwise authorized by" Windmar. Id. ¶ 45. Plaintiff
brought claims for trademark infringement under Section 32(1) of
the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under

Section 43(a), 15 U.S.C. § 1125(a); and trademark dilution under
Section 43(a), 15 U.S.C. § 1125(c). Id. ¶¶ 55, 68, 76.

## A. The *Complaint* is Not Moot

As a threshold matter, the Court turns to Defendant's argument
that the instant case is moot because Solar Now has removed all
contested advertisements from circulation. (Docket No. 11 at 13).
"It is well settled that a defendant's voluntary cessation of a
challenged practice does not deprive a federal court of its power
to determine the legality of the practice." Friends of the Earth,
Inc. v. Laidlaw Env't Servs., 528 U.S. 167, 189 (2000) (citations
and internal quotation marks omitted). To hold otherwise would be
to allow Defendant to continue to run the allegedly infringing
advertisements indefinitely without a court reviewing the issue,
provided the offending materials were taken down before a lawsuit
could begin. Although a case can be mooted by a defendant's
voluntary conduct "if subsequent events made it absolutely clear
that the allegedly wrongful behavior could not reasonably be
expected to recur," there is no indication that is the situation
here. Id. (citation omitted).

Furthermore, the *Complaint* alleges that Solar Now was still
using the allegedly infringing material at the time of filing,
contradicting Defendant's claims of mootness. (Docket No. 1 ¶¶ 42-
44). Although the materials may have been removed now, Plaintiff
asserts this is only because the contractual term of advertising

for the billboards has expired, not because Defendant Solar Now is

seeking to correct its behavior. (Docket No. 13 at 16). Treating

"any non-conclusory factual allegations in the complaint as true,"

the Court assumes Defendant Solar Now's allegedly wrongful

behavior could continue in the future and proceeds to the merits

of the *Complaint*. <u>Nieto-Vicenty</u>, 984 F.Supp. 2d at 20.

### B. **Windmar's Federal Trademark Infringement Claim Does Not Survive Rule 12(b)(6)**

Plaintiff alleges that Solar Now's advertisements constituted

trademark infringement because they were likely to confuse the

public about the nature of the parties' relationship. (Docket No.

1 ¶¶ 55-56). As alleged in the *Complaint*, Windmar owns the

registered marks at issue and that Defendant ran the offending

advertisements without permission. (Docket Nos. 1 and 1-12); *see*

<u>Venture Tape Corp.</u>, 540 F.3d at 60. Plaintiff alleges that Solar

Now's use of the marks confused consumers and harmed Windmar's

business and professional reputation, bringing claims of trademark

infringement as to the "origin, source, sponsorship, [and]

affiliation" of Solar Now's goods and services. (Docket No. 1 ¶¶

55-60); *see* <u>Venture Tape Corp.</u>, 540 F.3d at 60.

Although the Court must draw all reasonable inferences in

Plaintiff's favor, Windmar has not shown that its federal claims

are entitled to relief because it has not plausibly alleged a

likelihood of consumer confusion under the <u>Pignons</u> test. *See*

Schatz, 669 F.3d at 55; Ocasio-Hernandez, 640 F.3d at 14; Star
Fin. Servs., Inc., 89 F.3d at 120 (listing eight factors to show
the likelihood of confusion).

First, Windmar's registered marks do not closely resemble the
logos used in Solar Now's advertisements. The "WINDMAR HOME" logo
uses the words "WINDMAR HOME" written in deep blue, black, and
grey, with the distinct image of a windmill replacing the "I" in
"WINDMAR HOME." (Docket No. 1 at 5). This phrase is placed on a
white background and below an orange sun corona that uses
alternating short and long spiking sun rays. Id. The "WINDMAR
SOLAR" marks omit the windmill icon and are either: (i) all-black
on a white background or (ii) on a blue background with the orange
corona icon and the word "SOLAR" in orange while "WINDMAR" is in
white. Id. Finally, the "SOLAR ACADEMY BY WINDMAR" mark is on a
white background and partially overset by the orange corona icon
and a blue graduation cap; "SOLAR ACADEMY" is in orange font while
"BY WINDMAR" is in grey and blue.[1] Id. Defendant's "MOLINITO" logo
is different: there is no windmill icon; its colors include bright
blue, yellow, and white; the only word on the logo is "MOLINITO"
which is written in white font and set underneath a yellow corona
icon of identical sun rays on a bright blue background. (Docket
No. 1 at 8). The color schemes and words are different, and

---

[1] The Court notes that Plaintiff has not submitted evidence of registration for
the "WINDMAR SOLAR" or "SOLAR ACADEMY BY WINDMAR" trademarks. (Docket No. 1-
6).

Defendant's mark omits the windmill, a key feature of Windmar's primary mark. Although both designs include a corona, they are in different colors and patterns. A reasonable consumer would be hard-pressed to see one mark and immediately think of the other, and the Court finds it implausible that the marks could be confused with each other. While the "MOLINITO" mark may be understood to parody or allude to Plaintiff, as discussed below, the facts alleged in the *Complaint* do not support a finding that the marks used by Defendant could be understood to be the same as Windmar's registered marks. This factor leans in favor of Defendant.

Second, both marks indisputably relate to similar goods as they are used to advertise goods and services in the solar energy industry. (Docket No. 1 ¶¶ 5-6). This factor favors Plaintiff.

Third, the parties operate in "overlapping channels" of advertising due to the similarity of their services, as acknowledged by both parties. (Docket Nos. 1 ¶¶ 5-6 and 11 at 6). This factor favors Plaintiff.

Fourth, the *Complaint* alleges that Defendant has used the same type of advertising as Plaintiff (billboards and social media) and placed its billboards in proximity to at least one of Windmar's billboards. (Docket No. 13 at 10). It is plausible that a relationship exists between the parties' advertising. This factor favors Plaintiff.

Fifth, Windmar and Solar Now are engaged in the same line of business and thus "market to the same [class of] prospective purchasers." Id. This factor favors Plaintiff.

Sixth, Plaintiff presents no facts plausibly alleging that actual confusion has occurred, only conclusory allegations to this effect. (Docket Nos. 1 and 13). This factor favors Defendant.

Seventh, although Defendant avers its intention in adopting the controversial mark was to differentiate itself from Windmar for advertising purposes, Plaintiff asserts that Defendant acted in "bad faith" to willfully cause confusion about the affiliation between the parties. (Docket Nos. 1 ¶¶ 55-60; 11 at 6 and 13 at 11). This factor favors Plaintiff.

Eighth, Windmar's trademark is strong as it is the "market leader in Puerto Rico, regarding solar energy, as recognized by the Guiness [sic] World Book of Records," advertises and does business extensively in Florida and Puerto Rico, and has registered its "WINDMAR HOME" trademark with the Puerto Rico government and the USPTO. (Docket Nos. 1; 1-6 and 13 at 11-12). This is true even if, as discussed below, the mark is not famous. This factor favors Plaintiff.

If "a plaintiff fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint under" Rule 12(b)(6). Jack Daniel's Props., Inc., 599 U.S. at 157 n.2 (citation omitted). Viewing the facts alleged in the *Complaint*,

its exhibits, and supporting documents in the light most favorable
to Plaintiff, Windmar has not plausibly alleged a likelihood of
confusion for its trademark infringement claim to survive Rule
12(b)(6). Id.; see Ocasio-Hernandez, 640 F.3d at 14. A reasonable
consumer viewing Defendant's advertisements would not be confused
about its relationship to Windmar, the source of the parties' goods
or services, or any affiliation or endorsement made of or by either
Plaintiff or Defendant. Of the eight Pignons factors, six favor
Plaintiff and two favor Defendant. Star Fin. Servs., Inc., 89 F.3d
at 120. However, four of the factors favoring Plaintiff Windmar -
the second, third, fourth, and fifth factors - could be true for
any two companies competing in the same market and geographic area,
and do not weigh as heavily in the Court's analysis.

        While no single Pignons factor carries "dispositive weight,"
the dissimilarity of the parties' marks and lack of specific
allegations of confusion show that Plaintiff has not alleged facts
to plausibly show a likelihood of confusion. Borinquen Biscuit
Corp., 443 F.3d at 1120; see also Oriental Fin. Group, Inc., 832
F.3d at 36 (naming the "similarity of marks" as the "pivotal
factor" in determining the likelihood of consumer confusion). It
is unclear what, if any, confusion could arise from Defendant's
advertisements. (Docket No. 1-11). Plaintiff relies on its own
"naked assertions" that the marks are similar and consumer
confusion has or will occur. Ashcroft, 556 U.S. at 678. Plaintiff's

factual allegations for its trademark infringement claim amount to a "sheer possibility" that Solar Now acted unlawfully by infringing on its trademark, which is insufficient to evade dismissal under Rule 12(b)(6). <u>Id.</u>

Although not adopted by the First Circuit, Defendant urges the Court to invoke the nominative use test raised in <u>Swarovski Aktiengesellschaft</u>. 704 F.3d at 50-51; (Docket Nos. 11 and 18). In <u>Swarovski Aktiengesellschaft</u>, the First Circuit emphasized the district court had erred by granting the plaintiff a preliminary injunction without determining whether the defendant's activity was likely to cause confusion, treating the nominative use test as an affirmative defense rather than to weigh the likelihood of confusion. 704 F.3d at 52-53. The First Circuit explicitly declined to endorse a particular approach to the nominative fair use doctrine. <u>Id.</u> at 53. For this reason, the Court declines to apply the nominative use test discussed in <u>Swarovski Aktiengesellschaft</u>. Applying the <u>Pignons</u> facts to the likelihood of confusion here, the Court reiterates that Plaintiff has not alleged facts to plausibly show a likelihood of consumer confusion as to the source, affiliation, or existence of any other commercial relationship between Windmar and Solar Now that extends beyond their role as business competitors. (Docket Nos. 1 and 13).

## C. Windmar's Federal Unfair Competition Claim Does Not Survive Rule 12(b)(6)

Plaintiff does not specify which segments of Section 43(a) of the Lanham Act apply to its unfair competition claim. (Docket Nos. 1 and 13). Given the similarities between § 1114(1)(a) and § 1125(a)(1)(A), the Court proceeds under the understanding that Plaintiff Windmar intended to bring a false association claim under the Lanham Act. As this analysis requires a showing of a likelihood of consumer confusion under the Pignons factors, the Court applies its analysis above to Plaintiff's false association claim. Am. Bd. of Internal Med., 114 F.4th at 64 n.25. For this reason, the Court concludes that Windmar has not plausibly shown a likelihood of consumer confusion that would save its Section 43(a) claim from dismissal under a theory of false association.

The Court also finds that Plaintiff's filings do not develop a claim of false advertising. The factors of a false advertising claim are not fleshed out, and any allusions to this claim are vague enough that the Court interprets them as references to Windmar's other claims instead. See Cashmere & Camel Hair Mfrs. Inst., 284 F.3d at 310-11 (listing the elements of a false advertising claim). To the extent Plaintiff intended to bring a false advertising claim, it is waived as underdeveloped. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted

to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

### D. Windmar's Federal Trademark Dilution Claim Does Not Survive Rule 12(b)(6)

*i. Windmar's registered marks are not "famous" under the Lanham Act*

Plaintiff's trademark dilution claim cannot survive dismissal under Rule 12(b)(6) because its registered marks are not "famous" within the meaning of § 1125(c). The plain text of the Lanham Act defines a "famous mark" as one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Windmar's website states that it has "more than 20 years of experience energizing homes and businesses in Puerto Rico and more recently in Florida." (Docket No. 1-7 at 1). It further submits that it has made national and international promotional efforts, registered its trademarks under an "international class," and been recognized for installing over forty thousand solar batteries in unspecified locations. (Docket Nos. 1 ¶¶ 18-19; 1-6 and 13 at 14). However, as represented by Plaintiff, the geographic extent of its advertising, publicity of its registered marks, and sales or services offered under its registered marks are focused on a single United States territory and one state. (Docket Nos. 1 and 1-7); 15 U.S.C. § 1125(c)(2)(A)(i)-(iii).

While Plaintiff is highly active within Puerto Rico and Florida, it does not satisfy the demanding statutory requirements for a mark to be "famous." *See* <u>Cortes v. Sony Corp. of Am.</u>, 108 F.Supp. 3d 18, 27-28 (D.P.R. 2015) (citing to the Lanham Act for the proposition that a famous mark should be "widely recognized by the general consuming public of the United States as a designation of source of goods or services of the mark's owner"); <u>I.P. Lund Trading ApS v. Kohler Co.</u>, 163 F.3d 27, 47 (1st Cir. 1998) (same when finding a faucet design was not sufficiently famous despite being "featured and advertised in national magazines and displayed in museums"); <u>Lyons</u>, 882 F.Supp. 2d at 228 (a mark was not famous even though it "might be renowned in the veterinary community"). Plaintiff offers no further facts beyond bare allegations that it is known to the "general consuming public of the United States," falling short of the Lanham Act's requirements for a "famous mark." (Docket Nos. 1 ¶¶ 18-19; 1-6 and 13 at 12-13); 15 U.S.C. § 1125(c)(2)(A). Windmar cannot plausibly allege its trademarks are "famous" under the Lanham Act by simply stating that its company is "nationally" and "internationally active." *See* <u>Ashcroft</u>, 556 U.S. at 678 ("naked assertions" without "further factual enhancements" do not satisfy Rule 12(b)(6)).[2]

---

[2] Plaintiff misapprehends both the requirements of the "famous marks" doctrine and what the terms "national" and "international" mean in United States trademark law and in this Court. *See* 15 U.S.C. § 1127 ("The United States includes and embraces all territory which is under its jurisdiction and control," including the Commonwealth of Puerto Rico.).

ii. *Windmar's registered marks satisfy the Lanham Act's comparative advertising and parody exclusions*

Even if Plaintiff's trademarks were "famous marks," the underlying factual allegations in its trademark dilution claim still fail because Defendant Solar Now engaged in protected "fair use" of Windmar's marks. 15 U.S.C. § 1125(c)(3)(A).

<u>First</u>, when viewed in the light most favorable to Plaintiff, the purpose of billboards and social media posts at issue is clear to a reasonable consumer: humorous comparative advertising showing Solar Now should be chosen over its (fictional or real) competitors. (Docket No. 1-11). The mocked-up marks, including the "MOLINITO" mark, are compared with each other in the advertisements with the clear intention of encouraging consumers to hire Solar Now. The billboards all show the "Solar Now" name and logo at the top of a form with a large "X" marking it as the best option. <u>Id.</u> Meanwhile, the other two marks are placed in smaller font, without colors, further down on the form, and without any signs of approval. <u>Id.</u> at 2-12. The text to the left of the marks encourages views to choose the "#1" company, Solar Now. <u>Id.</u> Nowhere on the billboards is Defendant presented as an affiliate of Windmar. The social media post in question also clearly states that "Solar Now" is here to help prospective customers *who may be conflicted as to which solar energy company to work with*. <u>Id.</u> at 1. Defendant is not trying to affiliate itself with its competitors, but to

humorously show it is better than them. Any allusions to Plaintiff via the "MOLINITO" mark portray Solar Now as a viable – and preferable – alternative choice for consumers when looking at solar energy service providers. To put it simply: the Court does not find it plausible that Defendant's activities extended beyond permissible "advertising or promotion that permits consumers to compare" its services to that of its competitors. 15 U.S.C. § 1125(c)(3)(A)(i).

Second, Defendant's challenged advertisements are also protected by the Lanham Act's parody exclusion because the billboards and social media post make Windmar a subject of ridicule. 15 U.S.C. § 1125(c)(3)(A)(ii); (Docket No. 1-11). The use of a sun's corona and the word "MOLINITO," or "little windmill," conjures up the windmill imagery that Plaintiff uses in its registered marks. Jack Daniel's Props., Inc., 599 U.S. 161; (Docket No. 1-11). The juxtaposition of the "MOLINITO" mark against Solar Now's mark on the billboards humorously shows Defendant Solar Now to be a better company than "MOLINITO," and impliedly, Windmar. Jack Daniel's Props., Inc., 599 U.S. 161; (Docket No. 1-11). "MOLINITO" is not a particularly flattering phrase, mocking Plaintiff's logo and reputation by referencing it as a tiny windmill. Jack Daniel's Props., Inc., 599 U.S. at 161 (parody is less likely to create confusion as, while "[s]elf-deprecation is one thing," "self-mockery [is] far less ordinary."). The Court

does not find it plausible that a reasonable consumer could look at the Solar Now's social media post or billboards and infer that Plaintiff is a source or affiliate of Defendant. *Cf* id. (no parody protection when the defendant's use of the plaintiff's mark is source-designating). It is abundantly clear that Plaintiff is the subject of Solar Now's joke. (Docket No. 1-11).

*iii. Additional arguments*

Finally, the Court turns to Defendant Solar Now's argument that 15 U.S.C. § 1115(b)(4) "explicitly permits descriptive use of a mark in good faith and comparative advertising." (Docket No. 11 at 3). Section 1115(b)(4) acts as a defense for activity that would otherwise be infringing under § 1114 if the "use of the name, term or device charged to be an infringement" is the non-trademark use of a party's individual name in his own business or the name of an individual in privity with such a party. 15 U.S.C. § 1115(b)(4). The exception also applies if the term or device is "descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." Id. Section 1115(b)(4) is not relevant here because the allegedly infringing advertisements do not contain an individual's name, nor are they used "only" to describe the goods and services or geographic origin of Solar Now. Id.; (Docket No. 11).

After treating the *Complaint*'s "non-conclusory factual allegations" as true and viewing the facts "in the light most

favorable" to Plaintiff, the Court concludes that the *Complaint* lacks a plausible claim for relief to avoid dismissal under Rule 12(b)(6). (Docket No. 1); Ocasio-Hernandez, 640 F.3d at 14.

### E. The Court Does Not Retain Jurisdiction Over Plaintiff's Puerto Rico Law Claim

None of Plaintiff's federal law claims survive dismissal under Rule 12(b)(6). Considering First Circuit case law, the Court declines to exercise supplemental jurisdiction over the remaining Puerto Rico law claim. *See*, *e.g.*, Suárez v. Alivia Specialty Pharm., LLC, 2024 WL 4337329, at *1 (D.P.R. 2024) (when "federal claims are dismissed at an early stage of the proceedings, a District Court is well within its discretion to decline to exercise supplemental jurisdiction over pending state-law claims."); Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 36-37 (1st Cir. 2020); S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 92 (1st Cir. 2014).

## V.    CONCLUSION

For the foregoing reasons, Defendant Solar Now's *Motion to Dismiss Complaint Pursuant to Rule 12(b)(6)* at Docket No. 11 is hereby **GRANTED**. Windmar's federal trademark claims are hereby **DISMISSED WITH PREJUDICE**, while their Puerto Rico counterparts are **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of March 2025.

                              s/Raúl M. Arias-Marxuach
                              UNITED STATES DISTRICT JUDGE